# Kennedy v. Birmingham Railway, Light & Power Co.

1. *Street railway; right to establish rule, fixing higher rate to be paid by passenger failing to purchase ticket.*—As a means of requiring persons to purchase tickets before taking passage on their cars, carriers of passengers may adopt a rule or

regulation, establishing a higher rate to be paid the conductor than the rate charged for a ticket, but, to justify such discrimination in the rates, the carrier must provide proper facilities and accommodations for so purchasing tickets; and, therefore, if a carrier fails to give a passenger a convenient and accessible place and opportunity to buy his ticket, before entering a car, then the regulation establishing a discrimination in the rates is unreasonable and void, and constitutes no defense to an action brought by the passenger, for his ejection, by a conductor, after he has paid the ticket rate and refused to pay the increased rate by reason of not having a ticket.

2. *Same; same; case at bar.*—In an action by a passenger against a street railway for an alleged wrongful ejection from one of defendant's cars where it is shown that the plaintiff boarded the car at a station on the defendant's line where there were no tickets kept for sale, and that he was ejected from the car for his refusal to pay a greater rate for his passage than was required from holders of tickets, the fact that the defendant had established a rule or regulation, requiring its passengers who failed to purchase tickets to pay a higher rate than that charged for a ticket, constitutes no defense, and, this is true, although the defendant had a depot or place for the sale of tickets at a point some two and a half blocks (about 1,000 feet) from the point where plaintiff boarded the car.

APPEAL from the City Court of Bessemer.

Tried before the Hon. B. C. JONES.

This action was brought by the appellant, W. T. Kennedy, against the Birmingham Railway, Light & Power Company, to recover damages for the alleged wrongful ejection of the plaintiff from one of the cars operated by the defendant. It was averred in each count of the complaint that the defendant was engaged in operating a street railway system in Birmingham and in Bessemer and between said named places; that the plaintiff boarded one of the defendant's cars at or near the intersection of Fourth Avenue and Eighteenth Street in Birmingham for the purpose of going to Bessemer; that at said place, where plaintiff boarded the car, defendant had no depot, or agent, or tickets for sale; that upon the conductor's coming to collect plaintiff's fare, plaintiff tendered him fifteen cents, which was the regular fare on said line from Birmingham to Bessemer; that

the conductor took the fare, but later told the plaintiff that he could only take him, the plaintiff, to Wilkes, a station on said line between Birmingham and Bessemer; that the fare from Birmingham to Bessemer, when passenger had no ticket, was twenty cents; that upon the car arriving at Wilkes, and the plaintiff's refusing to pay the additional five cents, the conductor wrongfully ejected plaintiff from said car, causing him great vexation, annoyance and humiliation and damage to his character. There were demurrers interposed to the complaint, as amended, and these demurrers were overruled. Defendant pleaded the general issue and the following special pleas: "4. The defendant, for a further answer to the complaint in this cause and for a further answer to each and every count of said complaint, separately and severally, says, that at the time of the wrong and grievances therein complained of and for a long time prior thereto it had in force and effect a rule or regulation that the ticket rate from Birmingham to Bessemer was fifteen cents (.15), that such fare if paid in cash to its conductor in charge of its trains was twenty cents (.20); and the defendant further avers that plaintiff boarded one of its trains at Birmingham which was bound for Bessemer and did not have a ticket entitling him to ride to Bessemer. Defendant avers that plaintiff paid its conductor in charge of said train fifteen cents (.15) in cash, stating in substance, that he desired to ride to Bessemer, when plaintiff was told by defendant's conductor that the fare to Bessemer was twenty cents (.20) when paid to him in cash. And the defendant further avers that plaintiff refused or failed to pay the extra fare demanded by its conductor and its conductor thereupon ejected plaintiff from the train, using no more force in ejecting plaintiff than was necessary. 5. The defendant for a further answer to the complaint in this cause, and for further answer to each and every count of said complaint, separately and severally, says, that at the time of the wrongs and grievances therein complained of and for a long time prior thereto it had in force and effect a rule or regulation requiring passengers from Birmingham to Bessemer who were not provided with a ticket entitling them to passage from

Birmingham to Bessemer, to pay twenty (.20) cents for such passage. And the defendant avers that plaintiff boarded one of its trains in Birmingham and produced no ticket to its conductor and offered but the sum of fifteen (.15) cents for passage from Birmingham to Bessemer. The defendant further avers that its conductor demanded of plaintiff the sum of twenty cents (.20) for his fare, which plaintiff failed or refused to pay, whereupon defendant's conductor, after permitting plaintiff to proceed on his journey as far as his fifteen (.15) cents would entitle him to proceed, ejected plaintiff from the train, and, in ejecting plaintiff defendant avers that its conductor used no more force than was necessary."

To the fourth and fifth pleas, respectively, the plaintiff demurred upon the following grounds: (1.) Because it is not averred that defendant had tickets for sale at the place in Birmingham where plaintiff got on said train. (2.) Because it is not averred that said conductor did not threaten plaintiff with arrest as alleged in said complaint. (3.) Because it is not averred that defendant had tickets for sale at points from which it demanded additional fare from passengers without tickets. (4.) Because it is not averred that said conductor had tickets for sale. (5.) Because it is not averred that defendant offered plaintiff a reasonable opportunity to purchase thicket before boarding said car at said place he boarded it. These demurrers were overruled. On the trial of the case the averments of the complaint were substantially proved by the evidence. It was further shown by the defendant that it kept its tickets on sale at a certain place which was two and a half blocks from where plaintiff boarded defendant's car; that the rules and regulations of the company fixed the fare from Birmingham to Bessemer at fifteen cents when a passenger purchased a ticket, and further provided that where a passenger failed to purchase a ticket, the fare was twenty cents. Upon the introduction of all the evidence, the court, at the request of the defendant, gave the general affirmative charge in its behalf; to the giving of this charge, the plaintiff duly excepted. There were verdict and judgment for the defendant. Plaintiff

appeals and assigns as error the several rulings of the trial court to which exceptions were reserved.

JOHN W. TOMLINSON, for appellant.—A railroad company may establish a rate fare for passengers failing to provide themselves with tickets before entering the train higher than the ticket rate, but to justify this discrimination every reasonable and proper facility and accommodation must be afforded to the passenger to procure a ticket.—25 Am. & Eng. Ency. of Law (1st ed.), 1104-5, and cases cited in notes; Redfield on Railways, (6th ed.) 99; *Evans v. Memphis & Charleston R. R. Co.*, 56 Ala. 246; *Phettiplace v. Northern Pacific R. R. Co.*, 84 Wis. 412.

A street railway has no depot. Its stopping places are on each street corner and it transacts its business with the public in the car, and its tickets should be kept for sale where it transacts its business with the public.— 25 Am. & Eng. Ency. of Law, (1st ed.), 1079, note; *Sternberg v. The State,* 56 Am. & Eng. Ry. Cases 424; *Detroit v. Ft. Wayne, R. R. Co.,* 95 Mich. 456.

The conductor on said car, having collected and retained the cash fare, defendant has no right to put the plaintiff off for not having a ticket.—25 Am. & Eng. Ency. Law, (1st ed.), 1108, and cases cited in note; Rapalje & Mack's Digest, 193, note; *Poole v. Northern Pacific R. R. Co.,* 8 Am. St. Rep. 290; *Wardwell v. Chicago R. R. Co.,* 46 Minn. 514; 47 Am. & Eng. Railway Cases, 432; 24 Am. State Reports, 246; *Bland v. So. Pac. R. R. Co.,* 85 Cal. 570; 3 Am. & Eng. Ry. cases; 36 Am. Repts. 50.

WALKER, TILLMAN, CAMPBELL & PORTER, *contra.*—The rule set up in appellee's fourth and fifth pleas is reasonable. The following are some of the many decisions holding that such a rule is reasonable: *Manning v. L. & N. R. R. Co.,* 95 Ala. 392; *Wilsey v. L. & N. R. R. Co.,* 83 Ky. 511; *McGowen v. Morgan's L. & T. R. R. Co.,* 6 So. 606; *State v. Hungerford,* 38 N. W. 628; *Hilliard v. Goold,* 34 N. H. 230. See Rapalje & Mack's Digest of Railway Law, Vol. 7, p. 1080, where a

great many cases are cited in which such a rule is held to be reasonable.

. TYSON, J.—Substantially but one question is presented by this record. It is the reasonableness of a regulation of defendant company requiring the plaintiff as a passenger to pay in cash a greater sum than is charged by it for a ticket between the same points.

It is shown both by the averments of counts one and two and by the evidence, that the car boarded by plaintiff stopped at or near the intersection of certain streets in the city of Birmingham for the purpose of taking on passengers, and that defendant had no depot or agent or tickets for sale at that point. The point was designated by the defendant's conductor, in his testimony, as a flag station. It is true, that the evidence discloses that the defendant had a depot, ticket agent and tickets on sale in the city of Birmingham at a point some two and a half blocks (about one thousand feet) from the point where plaintiff boarded the car.

All the cases agree that carriers of passengers may require persons to purchase tickets before taking passage on their cars, and to this end may adopt a rule or regulation establishing a higher rate to be paid the conductor than the rate charged for a ticket. But to justify a discrimination in the rates, the carrier must provide the proper facility and accommodation for so purchasing the ticket. If the carrier fails to give the passenger a convenient and accessible place and an opportunity to buy his ticket before entering the car, the regulation is unreasonable and void, and is no defense to an action brought by the passenger for his ejection by the conductor after he has paid the ticket rate.—25 Am. & Eng. Ency. Law (1st ed.), 1104-5; Redfield on Railways, 104-105 and note; Elliott on Railroads, § 200; *Reese v. Pa. R. R. Co.*, 131 Pa. St. 422; *Sage v. Evansville R. R. Co.*, 134 Ind. 100; *Swan v. Manchester R. R. Co.*, 132 Mass. 116; *Pullman Co. v. Reed*, 75 Ill. 125; *Snellaker v. P. R. R. Co.*, 94 Ky. 597. This principle was clearly recognized and enforced in *Evans v. M. & C. R. R. Co.*, 56 Ala. 246, which was an action for damages by a passenger of a mixed train, operated by defendant, carrying both

freight and passengers, on account of ejection by the conductor after a tender of the amount of the fare, where it was held, that a railroad company, as a common carrier, may make reasonable rules for the regulation of the business and the performance of its public duties; but, in the adoption of these rules, regard must be had to the convenience and interest of the traveling public. It may forbid the transportation of freight and passengers on the same trains, or may require passengers, traveling on freight trains, to procure tickets before entering the cars; but, in such case, reasonable facilities for procuring tickets at or about the time of the arrival or departure of the trains, must be afforded, according to the established usage of all railroads; and it is not reasonable, while allowing passengers to travel on freight trains, to afford them no opportunity to procure tickets except at such hours as would make it more expeditious to travel by the passenger trains.

84 Wis. 412, that a passenger going upon a train at a station at which tickets are not sold cannot lawfully be charged more than the regular fare because of his not having a ticket. Likewise in *Poole v. Northern Pacific R. R. Co.*, 16 Oregon, 261, it was decided that a company which had provided a station without a ticket office and at which its passenger trains stop, has not put it in the power of the traveler to comply with such rules, and such rule would be unreasonable as applied to such stations or to such traveler, when he offered to pay the usual fare. If the railroad company has failed or neglected to furnish the traveler the opportunity to procure a ticket and he applies for a passage or enters the train, without having such ticket, but offers to pay the regular fare, it cannot lawfully eject him.

In *Sternberg v. The State*, (56 Am. & Eng. R. R. Cases, 424), it is said: "A street railway has no depots. Its stopping places are on each street corner and it transacts its business with the public in its cars and its tickets should be kept for sale where it transacts its business with the public."

We do not think that the plaintiff, under the facts of this case, should have been required to go two and a half blocks to purchase a ticket before boarding the car of

the defendant at a flag station, in order to have the benefit of the ticket rate. If defendant desires to enforce the rule or regulation at all points along its line where it receives passengers for transportation, it should have tickets on sale at those points. The keeping them for sale at one station will not justify its discrimination against passengers who take passage at other and different stations.

The several rulings of the trial court are not in harmony with these views.

Reversed and remanded.