(83 South. 142)

LOUISVILLE & N. R. CO. v. HARPER.
(8 Div. 174.)

(Supreme Court of Alabama.   June 12, 1919.
Rehearing Denied Oct. 23, 1919.)

1. CARRIERS ☞352—ACTS OF CONDUCTOR; LIABILITY OF CARRIER.

A conductor in charge of a train is vested with the power of the carrier in the collection of fares from passengers, and to that end is its vice principal, and may subject the carrier to liability for his acts while so acting.

2. CARRIERS ☞357—WRONGFUL EJECTION OF PASSENGERS.

Where plaintiff boarded a train with a ticket to F., and before arriving at F. informed conductor that he had decided to go on to W., and conductor directed him to get off at F. and buy a ticket, and he got off, but could not get a ticket because the agent was not in the ticket office, and he could not find him, carrier was liable for damages for ejecting him because he did not pay an excess fare chargeable in addition to the regular fare when the fare is paid in cash.

3. CARRIERS ☞247(1)—PAYMENT OF FARE NOT NECESSARY TO ESTABLISH RELATION.

It is not necessary that the fare be paid to establish the relation of carrier and passenger, and where one boards a train with the implied invitation or consent of the company's agent or conductor to take passage and with the intention of paying, the relationship is established.

4. CARRIERS ☞256—EXTRA FARE; FAILURE TO PURCHASE TICKET.

A condition precedent to the enforcement of a regulation exacting extra charges in cases of failure to purchase a ticket is that the carrier afford the passenger a reasonable opportunity to purchase a ticket, and not so affording, passenger is entitled to have transportation on payment or tender of the regular fare to the conductor in charge of the train.

5. CARRIERS ☞382(4)—WRONGFUL EJECTION; DAMAGES.

One wrongfully ejected from a train is entitled to recover the proximately resulting damages and damages for the inconvenience, humiliation, and indignity to which he is put, suffered, or caused thereby; humiliation and indignity in such case being elements of actual damages.

6. EVIDENCE ☞158(26)—BEST EVIDENCE.

Court did not err in sustaining an objection to a question, "Look at the rule of train fare, and will ask you if that has been in force as to the train fares ever since 1907," where the written or printed rule was not produced or its absence accounted for.

Appeal from Circuit Court, Morgan County; O. Kyle, Judge.

Action by Guthrie Harper against the Louisville & Nashville Railroad Company. Judgment for plaintiff, and defendant appealed. Transferred from Court of Appeals, under section 6, p. 449, Acts 1911. Affirmed.

The following is the count of the complaint referred to in the opinion:

The plaintiff claims of the defendant $1,000 damages for that the defendant on, to wit, January 6, 1917, operated a line of railway from Hartselle, Morgan county, Ala., to a station on its railroad known as Wilhite, in Morgan county, Ala., with engines and cars for the carriage of passengers thereover; that on, to wit, January 6, 1917, the plaintiff boarded the defendant's train at Hartselle, Ala., which said train transported passengers therefrom to said Wilhite station, the plaintiff at the time having a ticket authorizing his transportation as a passenger on said train to Falkville, which was an intervening station on defendant's line of railroad between Hartselle and Wilhite, and surrendered said ticket to the defendant's conductor on and in charge of said train; that after said train left Hartselle and was en route to Falkville and Wilhite, and before reaching Falkville, the plaintiff notified the defendant's conductor that he had decided to go to Wilhite, and the said conductor notified him to get off at Falkville, and to the defendant's ticket office maintained thereat, and purchase a ticket authorizing his transportation from Falkville to Wilhite; that when the train reached Falkville and stopped at defendant's station, plaintiff, in compliance with the request, direction, and instruction of defendant's said conductor as aforesaid, debarked from said train, and went to the defendant's said ticket office for the purpose of purchasing a ticket authorizing his transportation from Falkville to Wilhite, but the defendant's ticket agent was absent from the defendant's said ticket office, and plaintiff was unable to procure a ticket before the leaving of said train on its route from Falkville to Wilhite, and the plaintiff thereupon boarded said train and notified the defendant's conductor that he was unable to procure the ticket and tendered the conductor 15 cents in money and legal tender, one dime and one nickel, each and both of said coins being lawful money of the United States, and legal tender, but the defendant's said conductor on said train declined to allow plaintiff to ride further on said train, unless he would pay him 25 cents which was 15 cents in excess of the ticket fare from Falkville to Wilhite, the ticket fare between said stations on defendant's said line of railroad being 10 cents; that defendant's said conductor, after said train had traveled something like half a mile beyond the Falkville station and between that

station and Wilhite, stopped said train, and publicly ejected the plaintiff therefrom, and refused to transport the plaintiff to Wilhite, and left the plaintiff some three or more miles from and short of his destination.

Here follows catalogue of injuries and damages claimed.

The other facts sufficiently appear.

Eyster & Eyster, of Albany, for appellant.
S. A. Lynne, of Decatur, for appellee.

THOMAS, J. The count was not subject to demurrer directed thereto. The question is, Had the plaintiff the right to ride upon the train without paying the extra fare required by defendant, if its conductor had informed or arranged with plaintiff that the latter would have a reasonable opportunity to purchase a ticket at Falkville, from that point to Wilhite, and defendant failed to give or provide him such an opportunity?

[1] Under the law the conductor in charge of the train, in the discharge of the duties of his employment, is vested with the power of the defendant company in the collection of fares from passengers, and to that end is its vice principal, and may subject said company to liability for his acts while he is so acting. Republic I. & S. Co. v. Self, 192 Ala. 403, 407, 68 South. 328, L. R. A. 1915F, 516; A. G. S. R. R. Co. v. Baldwin, 113 Tenn. 409, 82 S. W. 487, 67 L. R. A. 340, 3 Ann. Cas. 916. Railroad conductors may make reasonable arrangement as to passengers transported under their direction, and may inform passengers what will be required of them, and bind the company by such information so given, in the discharge of the duties of their employment. Wright v. Glens Falls, etc., R. R. Co., 24 App. Div. 617, 618, 48 N. Y. Supp. 1026; Chicago, etc., R. R. Co. v. Burns (Tex. Civ. App.) 104 S. W. 1081, 1083; Dwinelle v. N. Y. C. & H. R. R. Co., 120 N. Y. 117, 127, 24 N. E. 319, 8 L. R. A. 224, 17 Am. St. Rep. 611.

[2] Plaintiff, testifying, said that he had boarded the defendant's train going south to Falkville, with a ticket he had purchased thereto and which he surrendered to the conductor; and, before arriving at the point of destination, he informed that official that he had decided to go to Wilhite, a point on said road beyond Falkville, and that the conductor directed him to "get a ticket at Falkville"; that on arrival at this place he went to the ticket office (the place provided for the sale of tickets to prospective passengers), but did not find an agent therein; that he looked for the agent without success; that the train started before he was given an opportunity to purchase a ticket, and he returned to the train, and informed the conductor of the absence of the agent and of his inability to purchase a ticket; that he offered to pay the regular cash fare, which he gave the conductor, and that said official, after taking the money, informed plaintiff that he would have to pay the increased cash or "excess fare," and, failing to do so, was put off the train. Witness testified on cross-examination, "I had 5 cents more than the 15 cents" given the conductor, who demanded as the excess cash fare 25 cents, which was more than the witness possessed. Witness further admitted that he did not tell the conductor that he had not the 25 cents demanded as the cash fare, but stated that he "did not get on the train and buy a ticket to Falkville for the purpose of trying to go to Wilhite without paying the excess fare, so as to get a suit against the company"; that the price of a ticket from Falkville to Wilhite was 10 cents.

Defendant's conductor in charge of said train testified that plaintiff had a ticket, and that when he "got to Falkville he got off and ran over to the depot there, and the train was there about a minute"; that, returning, he "jumped on the front end of the smoking car," and asked the plaintiff where he was going, and, after his reply, "told him the fare was a quarter, and he said he would pay 10 cents, but not a quarter"; and witness said he "would have to let him get off, and he did, and that was all. * * *"

Defendant insists that plaintiff made an admission that he knew about the cash fare, and did not tell the conductor whether he had other money or not. This is immaterial to the question of liability vel non for ejecting the plaintiff. The insistence is further made that the plaintiff was seeking a claim for damages. The record does not sustain this, but shows plaintiff to have been a bona fide passenger to the points in question.

[3] It was not necessary that the fare be paid to establish the relation of carrier and passenger, for if the plaintiff had entered the car in good faith, with the implied invitation or consent of the company's agent, to take passage and with the intention of paying, the relationship is established. B. R. L. & P. Co. v. Bynum, 139 Ala. 389, 395, 36 South. 736; N. B. R. R. Co. v. Liddicoat, 99 Ala. 545, 549, 13 South. 18. In L. & N. R. R. Co. v. Hine, 121 Ala. 234, 237, 238, 25 South. 857, 859, the court said:

"It does not appear from the complaint, however, that there was any rule of the defendant which required absolutely one who has actually obtained such permission to himself exhibit to the conductor the written evidence of such permission. In the absence of notice to the plaintiff of such absolute requirement, he had a right to assume that the defendant's ticket and telegraphing agent knew his duties and would perform them. If, therefore, as appears from the complaint, the plaintiff was induced to board the train and begin the journey disarmed of the written permit by the conduct of the defendant's agent and in reliance upon his advice and his undertaking to give the permit to the conductor, the defendant could not rightfully eject him from the train for failure to exhibit a written per-

mit to the conductor. The carrier cannot shield itself from the consequences of misconduct or mistake on the part of one of its agents, acting within the scope of his duties, which has naturally betrayed another of its agents into the final act of injury to the passenger."

[4] A condition precedent to the enforcement of a regulation exacting extra charges in case of failure to purchase a ticket is that the carrier afford the passenger a reasonable opportunity to purchase a ticket; not so affording, such passenger is entitled to have transportation on payment (or tender for acceptance to the conductor in charge of the train) of the regular fare for his transportation. Kennedy v. B. R., L. & P. Co., 138 Ala. 225, 230, 35 South. 108; Evans v. M. & C. R. R. Co., 56 Ala. 246, 28 Am. Rep. 771; Kozminsky v. Oregon S. L. R. R. Co., 36 Utah, 454, 104 Pac. 570, 24 L. R. A. (N. S.) notes 758–761.

[5] If the issue was found for plaintiff, he was entitled to recover the proximately resulting damages for his wrongful ejection from the car and for the inconvenience, humiliation, and indignity to which he was put, suffered, or caused thereby. Such damages as humiliation and indignity, if suffered by him from his ejection from the car, are said to be elements of actual damages arising "from a sense of injury and outraged rights engendered by the ejection alone, without regard to the manner in which it was effected, and though done only through mistake." L. & N. R. R. Co. v. Hine, supra, 121 Ala. 238, 25 South. 860; Florence Hotel Co. v. Bumpas, 194 Ala. 69, 73, 69 South. 566, Ann. Cas. 1918E, 252; L. & N. R. R. Co. v. Fletcher, 194 Ala. 257, 260, 69 South. 634; Clancy v. Barker, 131 Fed. 161, 66 C. C. A. 469, 69 L. R. A. 653. The plaintiff testified that his ejection from the train occurred in the presence of other passengers late in the afternoon, in cold and rainy weather, and he had to walk three miles, over muddy roads, from which he contracted a cold, from which he suffered about three weeks. The judgment was not excessive, and the motion for a new trial was properly overruled.

Assignments of error 11 and 12 are not well taken. The pleas are defective in not averring facts showing that a reasonable opportunity had been given plaintiff as a passenger on the train by defendant's agents on duty, on the arrival of the train at Falkville, and before its departure, to purchase a ticket to Wilhite.

[6] The ruling of the trial court in sustaining plaintiff's objection to the question, "Look at the rule of train fare, and [I] will ask you if that has been in force as to train fares ever since 1907," was free from error. The written or printed rule should have been produced or its absence accounted for. L. & N. R. R. Co. v. Orr, 94 Ala. 602, 10 South. 167; L. & N. R. R. Co. v. Boggs, 199 Ala. 225, 74 South. 337.

Under the evidence, a jury question was presented; and defendant's requested general affirmative charge was properly refused.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.